HENRY B. BRIGGS, Jr., PROSECUTOR, v. DAVID S. STANTON ET AL., DEFENDANTS.

Argued May 6, 1930—Decided May 8, 1930.

Before Justices PARKER, CAMPBELL and BODINE.

For the prosecutor, *Walter S. Keown.*

For the defendants, *Willis T. Porch.*

PER CURIAM.

On December 23d, 1929, at the last meeting for the year of the borough council of the borough of Pitman, in the county of Gloucester, some action was taken, the effect of which was the appointment or attempted appointment of Mary S. Chalfant as a member of said council to serve till January 1st, 1931, to fill an alleged vacancy caused by the alleged fact that prosecutor had ceased to be a resident of the borough. *Pamph. L.* 1920, *p.* 248. A writ of *certiorari* to review this action was allowed at the last term of this court, in January, 1930; and as there was then considerable doubt whether *certiorari* or *quo warranto* was the appropriate remedy, and counsel agreed that the main desideratum was a borough council that could function, it was formally stipulated and the stipulation made a part of the record, that "the

hearing and determination in this matter shall be treated and shall be accepted as and if the proceedings were instituted and heard on *quo warranto*, if this court shall determine that a writ of *quo warranto* should have been the proper procedure and not a writ of *certiorari;*

"And that the hearing and determination in this matter shall be binding on all litigants, especially with respect to the finding of this court, as to the residence of the prosecutor."

It is, therefore, plain that our finding on the question of residence will determine the right to the office of councilman previously held by Mr. Briggs.

His residence in Pitman at the time of his election and until August of 1929, was unquestioned. He had come there to live, with his wife and daughter in 1919; he owned his home there and still owned it on December 23d, 1929. He was a warden of the Episcopal church, treasurer of the local Republican club, voted in Pitman, and had served more than one term in the council. All this being conceded, and his prior residence being conclusively shown, it is presumed to continue until shown to have changed, and the burden of showing that is normally on the party asserting it, in this case his adversaries in the council. As residence is largely a question of intention, and Briggs persistently denied any intention of changing residence from Pitman, to support a finding that he had done this it should be inferable from facts proved that his actions indicating an intent to change his residence effectively negatived his professions to the contrary.

We have examined all the evidence with care, and conclude that no change of residence in the legal sense of the term can be inferred from it. Suspicion of such change, perhaps not unreasonable, grew out of the fact that Briggs left an employment in Philadelphia to accept one that suited him better in New York. Commuting between Pitman and New York was, of course, impracticable; so he had to be nearer his business during the week. As a temporary expedient he took a room in New York, leaving his wife and daughter at the Pitman home, returning home for week-ends and also spending at home (*i. e.,* at Pitman) the nights of the second and

fourth Monday of the month on which the council meetings were held. Clearly, there was no change of residence in this.

Quite naturally this arrangement did not suit his wife, and he cast about for some arrangement that would involve less separation. We gather from the testimony that he was considering the possibility of a permanent change but had not decided upon it, and quite conceivably was not yet altogether sure of holding the New York employment. Be this last as it may, when he heard that a cousin living in Westfield was going away for the winter, leaving her home which was fully furnished, unoccupied, and ascertained that this cousin would be willing to have him and his family occupy it during her absence of several months, he and his wife concluded to try Westfield temporarily and see how they liked it. So they went to sojourn in that house, taking their daughter and their clothing, linen and silver, as any family would occupy a furnished house at a summer place. They went there December 14th, apparently did not like it as well as they expected, and returned to Pitman January 11th. The Pitman house had not even been closed, but Mayor Stanton, who had not been re-elected and whose term was closing with the current year, and those in sympathy with him, being misinformed as to some facts and misinterpreting others, undertook to supersede an elected member of the council whose term had a year to run after that of the mayor had expired, and to substitute an appointed member of their own choosing. This action, we find, was wholly without warrant of law; and, therefore, this court should take such action as will nullify the illegal designation of Mrs. Chalfant and uphold the right of Mr. Briggs to the office.

As there was no resolution of the council on December 23d declaring a vacancy, the only action on which this court can lay its hand seems to be the announcement by the mayor that he appointed Mrs. Chalfant, and the confirmatory vote of council by a narrow margin.

It may be that the foregoing expression of our views will suffice to clear the atmosphere. If not, let the record be moulded into a *quo warranto* proceeding under section 4 of

the statute with judgment of ouster in favor of Briggs and against Mrs. Chalfant, and an order under section 11, and subject to the requirements of that section, for the restoration of Briggs to the possession of his office.